The Commissioners of the United States Deposit
Fund *vs.* Chase.

In July, 1837, R. executed a mortgage to the commissioners of the U. S. deposit
fund, to secure the payment of a loan of $2000.  Default being made in the
payment of interest, the premises were sold, in February, 1844, and bid off by
R. at $2296,69.  On the same day, $2000 was again loaned to him, by the com-
missioners, and he executed a new mortgage on the same premises, to secure
the payment; and the first mortgage was cancelled.  Default was again made
in the payment of interest, in 1846, and the premises were advertised and ex-
posed to sale in February, 1847, and no bid made therefor.  Intermediate the
giving of the first mortgage and the date of the second, C. recovered a judgment
against R., under which the premises were sold, and C. became the purchaser,
at the sheriff's sale, and was in possession of the premises.  In an ejectment
brought by the mortgagees against C.; *Held* that the right of possession was in
them, and that they were entitled to recover the premises.

*Held also* that if R., at the time the premises were sold under the first mortgage,
paid the amount of his bid in money, to the extent of the sum due for interest,
and the expenses, and gave a bond and mortgage, as a borrower, for the prin-
cipal due upon the first mortgage, such loan was authorized by the statute, and
the bond and mortgage were valid; although no money was actually passed and
repassed, between the parties.

Where a deed, executed by commissioners of loans, which was required by stat-
ute to be subscribed in the presence of two witnesses, was witnessed by but one,
but was duly acknowledged by the grantors, at the time; *Held* that it was a
good execution.

Ejectment for the recovery of lands situate in the county
of Otsego.  On the 22d of July, 1837, Jesse Rose mortgaged
several parcels of land, comprising improved and unimproved
lots, to the commissioners of the United States deposit fund for
the county of Otsego, to secure the payment of a loan of $2000.
In 1843, default was made in the payment of interest, and the
premises were sold on the 6th of February, 1844, and bid off by
Rose at $2296,69.  On the same day, $2000 was loaned to
Rose, and he executed a new mortgage on the same premises,
to secure its payment.  Default was again made in the pay-
ment of interest, in 1846, and the premises were advertised and
exposed to sale the February following, and no bid made there-

for. On receiving the second mortgage, the first was cancelled pursuant to the statute. The defendant was a creditor of Rose, under a judgment recovered intermediate the first and second mortgage. A sale was had under an execution issued upon his judgment, and the defendant was the purchaser, and received a deed in due time, and was in possession at the time of the commencement of this suit by the commissioners. The question was, in whom was the right of possession. The jury found a verdict for the plaintiffs; and the defendant moved for a new trial.

*E. Smith*, for the plaintiffs.

*A. Becker*, for the defendant.

*By the Court*, Morehouse, J. By the act authorizing a loan of the moneys of the United States deposited with the state for safe keeping, (*Laws of* 1837, *p.* 121, § 30,) it is provided that if the borrower neglects to pay the yearly interest within the time limited, the commissioners " shall be seised of an absolute and indefeasible estate in fee in the mortgaged premises to them, their successors and assigns, to the uses in the act mentioned, and the mortgagor, his or her heirs and assigns, shall be utterly foreclosed and barred of all equity of redemption of the mortgaged premises, &c. but the mortgagor, &c. shall be entitled to retain possession of the mortgaged premises, until the 1st Tuesday of February, thereafter." The two succeeding sections provide for a sale, and by section 33, if the amount due on the mortgage for principal, interest and costs is not bid, or being bid, is not paid, the commissioners are to enter into and take possession of the land. The same section secures to the mortgagor the right of redemption until an actual sale of the premises, and upon paying the principal and interest and costs, the title of the premises reverts to and reinvests in the mortgagor, his heirs or assigns. Section 30 of the act in question is a copy (with a few verbal changes of no consequence,) of the fifteenth section of the act of 1808, (*Laws of* 1808, *p.* 329; 3 *R. S.* 223,) except

the latter provision of the section relating to the possession and right to redeem as above mentioned. Under the act of 1808, it was held, in all our courts, that a mortgagor, after the default, had no legal title; and it was doubted whether he had any equitable title which could be directly enforced against the land itself. (3 *John. Ch.* 332. 9 *John. Rep.* 129. 14 *Id.* 362. 8 *Cowen,* 47. 8 *Wend.* 657.) In the last case, Justice Nelson suggested as probable that since the revised statutes in relation to uses and trusts no estate would vest in the commissioners as trustees, and the trust, &c. would only be valid as a power in trust. (1 *R. S.* 729, § 58.) That cause was decided in 1832. The act in question removes all doubt as to the equitable and legal rights of the defaulting mortgagor. He may retain possession until the first Tuesday in February succeeding a default, and redeem at any time before a sale by the commissioners. With this brief abstract of the law and statute applicable to the case I proceed to examine the points and arguments of counsel, repeating the language of the act when its meaning is as distinct as other words could make it.

It is insisted by the plaintiffs' counsel that the sale in February, 1844, by virtue of the mortgage of July, 1837, was conducted in such a manner that the proceedings thereon were void. It is made a point that the deed from them to Rose, though duly acknowledged, having but one witness conveyed no title; that the money not having been actually paid down by the purchaser and redelivered to him as a borrower by the commissioners, rendered the sale void; and that the commissioners having no right, by reason of these irregularities, to cancel the mortgage of 1837, were seised of the premises by virtue of it. These affirmations are denied by the defendant, and if tenable he insists as a corollary, that the plaintiffs can not recover, not having proceeded under the first mortgage to foreclose the equity of the mortgagor. If the borrower neglects to pay, for twenty-three days after the first Tuesday in October yearly, the interest due on his mortgage, or the principal when due, the commissioners are seised of an absolute and indefeasible estate in fee in the lands mortgaged, *to the uses in the act mentioned.*

The mortgagor is entitled to retain possession until the first Tuesday of February thereafter, and to redeem the same at any time before the sale. It is the duty of the commissioners to expose the lands to sale on the first Tuesday of February succeeding the default of the mortgagor; and if no person bid a sum equal to the amount due on the mortgage, for principal and interest, and expenses of the advertisement and sale, or if any person to whom the land, at such sale, shall be struck off, shall not pay, then the commissioners shall enter and take possession of the lands and premises, and let them for the benefit of the state until the 3d Tuesday in September then next, when they are again to be exposed to sale and sold to the highest bidder, if his bid is equal to the amount due on the mortgage for principal and interest, costs and expenses; if not, then the commissioners in behalf of, and in the name of the people of this state, become the purchasers, under the provisions of the act relating to the appraisement of the premises.

I think the commissioners have no right to enter into and take possession of the premises, but upon the contingencies mentioned in the 33d section of the act, an exposure of the lands for sale and no bid therefor, or the person bidding not paying therefor after they are struck off to him. From my view of the case, however, this point does not arise. The lands mortgaged in 1837, were duly exposed to sale on the first Tuesday in February, 1844, and bid off by Jesse Rose the mortgagor, for a sum equal to the amount due on the mortgage for principal and interest and costs and charges. He, as such purchaser, offered to borrow the principal sum which *was to be paid* by him for the premises, and the commissioners being satisfied that the security offered conformed to the requirements of the act, loaned him the principal sum as a preferred borrower under the 39th section of the act. The terms of the sale are prescribed by the statute, and the commissioners have no discretion. They can not sell on credit, and the whole amount is to be paid down. What they may do is a question of power, and if the terms of sale when the premises are struck off, are not complied with, they cannot resell, but must enter into and take possession.

(*Sherwood* v. *Read, 7 Hill,* 431.)  The questions upon which the plaintiffs rely, recur : Did Rose comply with the terms of sale ?  Was the amount bid paid to the commissioners ?  From a sense of safety in reposing upon the mortgage of 1837, the counsel for the plaintiffs assumes the negative of these interrogatories.  In this I think he is mistaken.  The land was struck off to him, and he paid for the same, in money, to the amount due on the mortgage for interest and the expenses of advertisement and sale.  And by a bond and mortgage as a borrower equal to the principal due or secured by the first mortgage, such loan is authorized by the 39th section of the act, if the purchaser of mortgaged premises offers to borrow *the principal sum or sums that is or are to be paid by him.*  A construction which would require the ceremony of passing and repassing money between the parties, would discredit the intelligence of the lawmakers.  Their language repels the disparagement. It is *the sum or sums that is or are to be paid,* and not the sum or sums that has or have been paid, which the purchaser may borrow.  If the commissioners had pursued the advice and instructions of the comptroller in circular No. 1, 1840, adapted to such a case, they would have inserted in the second mortgage the fact that it was executed to secure the consideration money on the purchase of the premises therein described.  It is not material, however, as affecting the lien of the vendors for the purchase money.  It is a right founded in natural justice.  It is found in the digest of the Roman law, and explicitly laid down in the Institutes.  The vendor of property sold should have priority of payment, for the price, against the vendee and his creditors ; and the doctrine is as familiar in courts of law as courts of equity, and habitually applied in both.  Interest was paid upon the mortgage of 1844 for the year 1845, and default made in 1846, the premises advertised for sale on the first Tuesday of February following, and no bid made.  The commissioners then had a right to enter into and take possession of the premises, and let them until the third Tuesday in September following, when they were again to offer them for sale. The 27th section of the act requires the mortgages taken to be

executed in the presence of two or more witnesses who shall subscribe the same as such witnessess.   Section 57, prescribing the form of the deed to be executed by the commissioners, on a sale, requires its subscription to be in the presence of two witnesses.   The deed to Rose, whatever may have been the number of witnesses present, is subscribed by but one, but it was duly acknowledged at the time.   I think that a good execution.   Certainly the reason for an attestation by witnesses fails when the deed is duly acknowledged; and the case comes within the general rule of the statute, and the deed took effect immediately. (1 *R. S.* 738, §.137.)   It is undoubtedly true that when a power or franchise is created by a statute which prescribes the mode of its exercise, it must be exercised by the mode pointed out by the act. (*Head* v. *Providence Insurance Company,* 2 *Cranch,* 127.)   In 1 *Burrow,* 447, Lord Mansfield says, "There is a known distinction between circumstances which are of the *essence* of a thing required to be done by an act of parliament, and clauses merely directory."   Our own reports are full of cases illustrating the distinction referred to.   The leading ones are cited in Smith's Commentaries, chapter 15, of affirmative and negative statutes, 771, §§ 670, 678.   By the act, the money was apportioned among the several counties, and again among the cities and towns of the respective counties, and the commissioners "shall loan out the same to the inhabitants of their respective counties on mortgage on improved lands in the same county, owned by the borrower."   This provision is clearly directory, within the rule referred to; and a departure from it would not affect the validity of the security, or absolve the borrower from personal responsibility upon his bond.

New trial denied.